**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | | |
|---|---|---|
| **ALLTEL CORPORATION d/b/a** | ) | |
| **VERIZON WIRELESS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** 3:23-cv-381-CWR-LGI |
| | ) | |
| **RANKIN COUNTY, MISSISSIPPI,** | ) | |
| | ) | |
| **Defendant.** | | |

**COMPLAINT FOR EQUITABLE RELIEF, DECLARATORY JUDGMENT, AND
REQUEST FOR EXPEDITED REVIEW**

Plaintiff, Alltel Corporation d/b/a Verizon Wireless ("Verizon Wireless"), files this Complaint for Equitable Relief, Declaratory Judgment, and Request for Expedited Review against Rankin County, Mississippi (the "County" or "Defendant"), and states as follows:

## I.    INTRODUCTION.

1.    This action arises out of the unlawful denial of Verizon Wireless' application to construct a wireless telecommunications facility on real property located in Rankin County, Mississippi.

2.    Verizon Wireless seeks to deliver the latest available wireless telecommunications technology to its customers. As part of this effort, Verizon Wireless seeks to identify and fill significant gaps in wireless coverage and capacity. To fill gaps in coverage and capacity, and meet growing demand, Verizon Wireless must expand its network by constructing wireless infrastructure designed and developed by Verizon Wireless' engineering staff and outside professionals.

3.      Verizon Wireless' network infrastructure is made up of multiple wireless service facilities.  Each of Verizon Wireless' facilities can only serve limited areas because of, *inter alia*, geography and radio frequency bands.  Verizon Wireless' facilities must be located in the areas where service is needed and in close proximity to other Verizon Wireless' facilities to provide its customers with adequate signal strength, services, and a useable wireless telecommunications network.

4.      Verizon Wireless brings this action to require the County to permit the construction of a new wireless telecommunication tower that will fill a significant gap in wireless coverage and capacity in Rankin County, Mississippi.

5.      The County's denial of Verizon Wireless' application was not supported by substantial evidence contained in a written record, discriminates among functionally equivalent wireless providers, and effectively prohibits the provision of personal wireless service in the vicinity of the proposed facility.

6.      Accordingly, the County's denial of Verizon Wireless' application violates the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7), (the "TCA"), and Verizon Wireless is entitled to an order directing the County to grant Verizon Wireless' application for the proposed facility.

7.      Verizon Wireless requests expedited treatment of this Complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

4873-1729-2903

## II.    THE PARTIES.

8.    Alltel Corporation doing business as Verizon Wireless, is a Delaware corporation registered in the State of Mississippi and having its principal address in Basking Ridge, New Jersey.

9.    The County is a political subdivision established under the laws of the State of Mississippi and is subject to the jurisdiction of this Court.

## III.    JURISDICTION AND VENUE.

10.    This Court has jurisdiction over this matter pursuant to: 28 U.S.C. § 1331 (federal question), the TCA, 47 U.S.C. § 332(c)(7)(B)(v), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

11.    Venue is proper in this Court pursuant to 47 U.S.C. § 332(c)(7)(B)(v) and 28 U.S.C. § 1391(b) because the County is deemed a resident of this judicial district, the proposed wireless communications facility would be located in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## IV.    LEGAL BACKGROUND.

A.    **The TCA Generally.**

12.    The TCA governs federal, state, and local government regulation of the siting of personal wireless service facilities such as the one at issue in this case.  47 U.S.C. § 332(c)(7)(B).

13.    The purpose of the TCA is to "make available, so far as possible, to all the people of the United States . . . a rapid, efficient, Nation-wide, and world-wide wire and radio communications service with adequate facilities at reasonable charges, for the purpose of the

4873-1729-2903

national defense, for the purpose of promoting safety of life and property through the use of wire and radio communications . . . ." 47 U.S.C. § 151.

14.    The TCA reduces barriers local governments impose to defeat or delay the installation of wireless communications facilities and protects against irrational or baseless decisions by local authorities.  *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cnty.*, 546 F.3d 1299, 1306 (10th Cir. 2008) (quoting *Sw. Bell Mobile Sys., Inc. v. Todd*, 244 F.3d 51, 57 (1st Cir. 2001) (abrogated on other grounds by *T-Mobile S., LLC v. City of Roswell, Georgia*, 574 U.S. 293 (2015)).

15.    In enacting the TCA, Congress considered the potential conflict between state and local governmental regulation of the placement and aesthetic effects of wireless telecommunications facilities and the national need for rapid deployment of economical and effective wireless services.  The TCA imposes significant restraints on local governmental actions that might limit the provision of wireless telecommunications services, while preserving state and local governmental authority over decisions regarding the "placement, construction, and modification of wireless facilities."  47 U.S.C. § 332(c)(7)(A).

16.    The Federal Communications Commission (the "FCC") is the agency responsible for implementing and enforcing the TCA. 47 U.S.C. §§ 151, 154(i), 201(b), 303(r); *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 293 (2013). The FCC's rulings are entitled to deference. *See Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005); *Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723, 731 (5th Cir. 2018).

**B.    The TCA Prohibits Local Governments from Effectively Prohibiting Wireless Providers from Providing Service.**

4

17.    The TCA specifically prohibits state and local governing entities from taking actions that effectively prohibit wireless providers from providing service.   47 U.S.C. § 332(c)(7)(B)(i).

18.    The TCA states, in pertinent part, that state and local government regulation of personal wireless service facilities:

(II)    shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

47 U.S.C. § 332(c)(7)(B)(i)(II).

19.    In a 2018 ruling, the FCC established and clarified the test for proving a claim for effective prohibition of services under section 332(c)(7)(B)(i)(II). *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Inv.*, 33 F.C.C.R. 9088, ¶¶ 35-36 (2018) ("2018 Declaratory Ruling"). The FCC explained "an effective prohibition occurs where a state or local legal requirement **materially inhibits** a provider's ability to engage in any of a variety of activities related to its provision of a covered service." *Id.* (emphasis added). Under the FCC's test, an effective prohibition occurs when a local governing body materially inhibits a wireless service provider's ability to engage in any variety of activities related to its provision of wireless services, including when filling a gap in coverage, densifying a wireless network, improving capacity, or improving service capabilities. 2018 Declaratory Ruling ¶ 37.

20.    In the 2018 Declaratory Ruling, the FCC rejected "alternative readings of the effective prohibition language that have been adopted by some courts and used to defend local requirements that have the effect of prohibiting densification of networks." 2018 Declaratory Ruling ¶ 40.

5

21.    Prior to the FCC establishing the materially inhibit standard, a majority of courts agree that proving an effective prohibition requires a showing of two prongs (1) a "significant gap" in service; and (2) some inquiry into potential alternatives to the proposed site. *See Second Generation Props., L.P. v. Town of Pelham*, 313 F.3d 620, 634 (1st Cir. 2002); *T-Mobile Cent., LLC v. Charter Twp. of W. Bloomfield*, 691 F.3d 794, 807 (6th Cir. 2012); *MetroPCS, Inc. v. City & Cnty. of S.F.,* 400 F.3d 715, 733 (9th Cir. 2005).

22.    Regarding the first prong, to demonstrate a "significant gap" in service, the majority of circuit courts (the First, Sixth, and Ninth) involve a determination of whether the area has a significant gap in the applicant's own wireless coverage. *Id.*  Regarding the second prong, to demonstrate some inquiry into potential alternatives to the proposed site, the majority of circuit courts (the Second, Third, and Ninth) involve a determination of whether "a good faith effort has been made to identify and evaluate less intrusive alternatives, e.g., that the provider has considered less sensitive sites, alternative system designs, alternative tower designs, placement of antennae on existing structures, etc." *APT Pittsburgh Ltd. P'ship v. Penn Twp. Butler Cnty. of Pennsylvania*, 196 F.3d 469, 480 (3d Cir. 1999); *See also T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 996 (9th Cir. 2009)(explaining "adopted the 'less intrusive means' standard used by the Second and Third Circuit.").

C.    <u>**The TCA Prohibits Local Governments from Discriminating Among Providers**</u>.

23.    The TCA specifically prohibits state and local governing entities from discriminating among wireless providers and from taking actions that effectively prohibit wireless providers from providing service.  47 U.S.C. § 332(c)(7)(B)(i).

24.    The TCA states, in pertinent part, that state and local government regulation of personal wireless service facilities:

6

(I)     shall not unreasonably discriminate among providers of functionally equivalent services;

47 U.S.C. § 332(c)(7)(B)(i)(I).

**D.**     <u>The Local Government is Required to Put a Denial in Writing; the Denial is Required to be Supported by Substantial Evidence in a Written Record; and the Court's Review of the "Substantial Evidence" is Confined to that Written Record.</u>

25.     The TCA requires that state and local governing bodies put a denial of a request for a wireless services facility in writing and that the denial be supported by substantial evidence in a written record.

26.     The relevant language provides:

(iii)     Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities **shall be in writing and supported by substantial evidence contained in a written record**.

47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added).

27.     "'[G]eneralized concerns' about aesthetics or property values do not constitute substantial evidence." *U.S. Cellular Corp. v. City of Wichita Falls, Tex.*, 364 F.3d 250, 256 (5th Cir. 2004)(citing *Preferred Sites, LLC v. Troup Cnty.*, 296 F.3d 1210, 1219-1220 (11th Cir. 2002)).

28.     The Court's "judicial review is confined to the administrative record." *Nat'l Tower v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 22 (1st Cir. 2002). *See also USCOC of Greater Iowa, Inc. v. Zoning Bd. of Adjustment of the City of Des Moines*, 465 F.3d 817, 820 (8th Cir. 2006) ("Congress did not give the courts authority to hear a zoning case anew or to take new evidence, but only to review the 'written record' for 'substantial evidence' supporting the decision of the local authority.").

7

E.     <u>**Remedies**</u>.

29.     The TCA provides that "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with [the TCA] may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(v).

30.     Appeals under Section 332(c)(7)(B)(v) are to be heard and adjudicated on an expedited basis. *BellSouth Mobility Inc. v. Gwinnett County,* 944 F. Supp. 923, 929 (N.D. Ga. 1996) (courts shall act expeditiously in deciding appeals brought under section 332(c)(7)(B)(v)).

31.     An injunction ordering issuance of a permit is an appropriate remedy for violation of the TCA. *Preferred Sites*, 296 F.3d at 1222; *see also, e.g., Brehmer v. Planning Bd. of the Town of Wellfleet,* 238 F.3d 117, 120-22 (1st Cir. 2001) (same); *Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Twp.,* 181 F.3d 403, 409-10 (3d Cir. 1999) (same); *Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d 490, 497 (2d Cir. 1999) (same).

F.     <u>**Relevant Rankin County Ordinances**</u>.

32.     The County has enacted ordinances governing the siting and construction of wireless telecommunications facilities that are contained in the Zoning Ordinance of Rankin County, Mississippi (the "County Zoning Ordinance").

33.     Wireless facilities are allowed in "RE-1A" (Residential Estate Mixed District) zoning districts subject to a conditional use (special exception) permit. *See* County Zoning Ordinance at §§ 201 (definition of facilities and utilities, public/quasi-public), 802(I) (conditional use and structures provided in section 2905).

34.     Section 402 (Public/Quasi-Public Facilities and Utilities) states:

8

All public and quasi-public facilities and utilities, as defined under Article II of this Ordinance, **may be located in any district in the County**, provided:

A.    That all applicable requirements of federal, state and county laws shall be met.

B.    That all such proposed uses **shall be subject to the procedures stated under Section 2905** relative to Conditional Uses (Special Exceptions), **except for cellular phone towers/antennas and churches which may be approved through administrative review by the Department of Community Development**. The Department of Community Development may defer review and approval to the Planning Commission.

No public or quasi-public facility or utility shall be located in a residential district or other district where such land use would adversely affect the surrounding area.

County Zoning Ordinance § 402 (emphasis added).

35.    Section 403 (Dimensional Requirements for Public/Quasi-Public Facilities and Utilities in all Districts) provides:

Developers of churches, schools, hospitals, civic organizational buildings, country clubs, and **other public/ quasi-public facilities or utilities in any district shall comply with the following dimensional requirements**:

403.01    Maximum Building Height: 35 feet, unless greater height is specifically approved by the Board of Supervisors based upon the required site plan review. Radio, water, **cellular phone, and other communication towers may exceed 35 foot height restrictions based upon site plan review. Cellular towers/antennas shall be built as high as practical in order to allow other cellular providers the option of co-locating on an existing tower rather than building additional towers/antennas**.

403.02    Minimum Lot Area, Lot Width and Yards: Minimum lot areas, lot widths and minimum yards for all public/quasi-public uses shall be based upon the proposed use, subject to approval of a site plan submitted in accordance with Sections 2907 through 2910 of this Ordinance.

County Zoning Ordinance § 403 (emphasis added).

9

36.     Section 2905 (Conditional Uses (Special Exceptions)), states:

The Board of Supervisors is empowered to hear and decide whether or not proposed conditional uses (special exceptions) authorized under this Ordinance should be granted.

2905.01 Requirements for Granting a Conditional Use Permit: Any person desiring a conditional use shall submit a written application (on a form furnished by the Zoning Administrator) indicating the Section in the Ordinance under which the conditional use is sought and stating the grounds on which it is requested.  The Board of Supervisors shall not grant a conditional use unless satisfactory provision and arrangement has been made concerning all of the following:

A.     Ingress and egress to property and proposed structures thereon with particular reference to vehicular and pedestrian safety and convenience, traffic flow and control, and access in case of fire or catastrophe.

B.     Off-street parking and loading areas.

C.     Refuse and service areas.

D.     Utilities, with reference to locations, availability, and compatibility.

E.     Screening and buffering with reference to type, dimensions, and character.

F.     Required yards and other open space.

G.     General compatibility with adjacent properties and other property in the district.

H.     Any other provisions deemed applicable by the Board of Supervisors.

2905.02 Site Plan Required: Every applicant for a conditional use permit shall submit a site plan in accordance with Sections 2907 through 2910 of this Ordinance.

2905.03 Public Hearing Required: A public hearing shall be held in accordance with Section 2911 of this Ordinance for all proposed conditional uses.

County Zoning Ordinance at § 2905.

## V.    FACTS.

### A.    Background regarding Verizon Wireless.

37.    Verizon Wireless provides commercial mobile radio services, personal and advanced wireless services, and other telecommunications services, as those terms are defined under federal law, in the State of Mississippi, including the County.

38.    To advance the national policies of the TCA established by 47 U.S.C. § 151 and the Federal Communications Commission, Verizon Wireless constructs towers and other wireless facilities to create and maintain a network of sites which consists of antennas and communications equipment designed to send and receive radio signals.

### B.    Selection of the Old Pearson Road Site.

39.    Verizon Wireless uses radio frequency ("RF") engineers using sophisticated proprietary techniques to conduct propagation studies to determine when and where a new wireless facility is required.

40.    To provide reliable service, radio signal coverage from sites must overlap.  Verizon Wireless is not able to provide reliable service to consumers if it is unable to construct sites to create and maintain this overlapping coverage.

41.    Verizon Wireless determined that it has a significant gap in coverage in this portion of Rankin County.  In particular, a new tower is required to offload wireless traffic currently served by existing sites and the network that serves the Old Pearson Road and the surrounding area, along with filling in significant gaps in coverage in the area.

42.    Heavy usage stemming from the massive expansion in usage of and demand for wireless communications has exhausted the existing sites and network in and around the area

11

around Old Pearson Road.  In addition, the new site is also needed to fill a significant gap in coverage on Monterey Road and the surrounding area.  Verizon Wireless further determined there was a need to increase the capacity of its wireless network to allow existing sites in the area to operate more reliably and efficiently.

43.    In an attempt to avoid having to build the new site, Verizon Wireless performed upgrades to its existing sites to maintain reliable services and absorb the increasing demands on its network.  Despite these upgrades and Verizon Wireless' best efforts to keep up with capacity, Verizon Wireless determined that it still needed to build an additional site to fill the significant gap in coverage (both capacity and coverage issues) for its existing network that serves the Old Pearson Road and surrounding areas.

44.    Accordingly, Verizon Wireless began to look for property on which to develop a new wireless telecommunications facility to complement its existing wireless network.

45.    Verizon Wireless issues a search ring in the area that defined the geographic area in which a new wireless telecommunications facility would need to be located.

46.    An appropriate candidate would have to fill the significant gap in Verizon Wireless' coverage (i.e., be located within the search ring), comply with the County's zoning requirements, be leasable, and be buildable.  A property that does not meet each of those requirements is not a viable candidate.

47.    After a thorough investigation of the surrounding area, Verizon Wireless determined there were no existing communications towers or structures close enough to the targeted area that could accommodate collocation and remedy Verizon Wireless' significant gap in coverage.

4873-1729-2903

48.     After considering numerous alternative sites, Verizon Wireless identified the property located at 2622 S. Old Pearson Road, Richland, Mississippi 39226 (the "Old Pearson Road Site") as the only viable site to locate the proposed telecommunications tower.

49.     Verizon Wireless proposed to develop a 200' monopole tower, with a 10' lightning rod, on the Old Pearson Road Site.  The height was determined to be the minimum needed to address the coverage gap and capacity issues in the area of the Old Pearson Road Site.

50.     The proposed tower will have ample space for other cellular providers to collocate rather than building additional towers.  *See* County Zoning Ordinance at § 403 (encouraging towers to be built as high as practical to allow other cellular providers to collocate).

51.     The Old Pearson Road Site is located at the rear of a 17.76-acre tract of land in a "RE-1A" (Residential Estate Mixed District) zoning district (the "Property").[1]

52.     The parcels surrounding the Property are also located in the RE-1A zoning district. The proposed tower also will be located over 200' from the closest neighbor's property line, and 360' from an actual residence.

53.     Wireless telecommunications facilities are allowed in a RE-1A zoning district subject to a conditional use permit by the County.  *See* County Zoning Ordinance at §§ 402, 802(I).

54.     The Old Pearson Road Site location offers some natural screening buffers as sixty- to eighty-foot trees will hide most of the tower.

---

[1]  The Rankin County Official Zoning Map is available at the following website: https://www.rankincounty.org/egov/documents/1677260634_21763.pdf.

4873-1729-2903

55.     The Old Pearson Road Site is critical for Verizon Wireless to develop a seamless wireless telecommunications network, fill a significant gap in coverage, improve capacity in the area, densify its wireless network, and improve service capabilities.

**C.**    **The Application.**

56.     On or around December 12, 2022, Verizon Wireless submitted an Application for Zoning Action seeking a conditional use (special exception) permit to develop a new wireless telecommunication facility on the Old Pearson Road Site (the "Application"). [A copy of the Application (and supporting documents) is attached as **Exhibit A**.]

57.     All required and necessary supporting documents were included with the Application in compliance with the County Zoning Ordinance, including a site plan. [A copy of the site plan is attached as **Exhibit B**.] In addition, the Application and supporting documents evidence the need for the Old Pearson Road Site to provide wireless telecommunications coverage and capacity to the County.

58.     The Application complied with all the applicable general and specific procedures, requirements, and standards required by the Ordinance.

59.     The County never provided Verizon Wireless with notice that the Application was incomplete, deficient, or otherwise failed to meet the requirements of the Ordinance.  Therefore, pursuant to FCC's declaratory rulings, the Application was deemed complete. *See In re Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B)*, 24 F.C.R.R. 13994, ¶¶ 52-53 (2009); *In the Matter of Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Pol'ys*, 29 F.C.C.R. 12865, ¶¶ 16, 254-261 (2014).

D.    <u>**Board of Supervisors Hearing**</u>.

60.    The County set a public hearing on the Application before the County's Board of Supervisors for May 1, 2023.

61.    At the public hearing, Verizon Wireless provided evidence that the Old Pearson Road Site was the only site in the search ring that could provide both the required coverage and capacity solution to fill the significant gap in coverage.

62.    Verizon Wireless demonstrated through substantial evidence that there were no towers or other suitable structures in the area on which Verizon Wireless could collocate its equipment.

63.    Specifically, Verizon demonstrated that an existing tower, located approximately 1600' feet north of the Old Pearson Road Site, was not a viable candidate to provide adequate coverage or relieve the capacity issues in the area because of its location (too far north), lower ground elevation, and lower available mounting height.  Ultimately, this other tower did not meet Verizon Wireless' engineering requirements for coverage and therefore it was not a viable option. [A copy of the letter from Verizon Wireless' RF Engineer provided to the Board of Supervisors at the May 1, 2023 hearing is attached as **Exhibit C.**][2]

64.    Verizon Wireless also presented substantial evidence showing how the Old Pearson Road Site would fit into the existing network of Verizon Wireless' telecommunications sites in the area.

---

[2] Verizon Wireless provided a similar letter in the supporting materials for its Application; however, the letter provided at the hearing provided additional details.

65.    Verizon Wireless presented evidence that it had evaluated all other potential sites in the search ring and that the Old Pearson Road Site was the only site available that was leasable and would provide the coverage needed to develop the network and close a significant gap in coverage and capacity.  [The elimination map provided to the Board of Supervisors at the May 1, 2022 hearing is attached as **Exhibit D.**]

66.    Verizon Wireless presented evidence that, despite its equipment on surrounding tower sites around the coverage area, a significant coverage gap existed, and the Old Pearson Road Site was needed to close the significant gap in coverage and relieve capacity congestion in Verizon Wireless's telecommunications network.

67.    Verizon Wireless offered evidence that the proposed tower would be safe and met all of the requirements of the County Zoning Ordinance.

68.    Verizon Wireless addressed all of the grounds for considering a conditional use (special exception) permit under the County Zoning Ordinance.

69.    Verizon Wireless' substantial evidence supported granting the Application.

70.    No evidence was presented in opposition to the Application or to Verizon Wireless' presentation.

71.    Instead, the opposition consisted of the following:

   a. Speculation and conclusory statements by the Mayor of the City of Richland ("Richland") about how the proposed facility would impact the future growth and Richland's comprehensive use plan; and

16

b.     Speculation and conclusory statements by a neighboring property owner that the proposed tower was not compatible with his potential use of his property.

72.    None of the public comments were supported by any evidence.

73.    Instead, these comments amounted only to speculation and generalized concerns about aesthetics or property values that do not constitute substantial evidence. *See supra* at ¶ 25.

74.    Following the public hearing on the Application, Supervisor Gaines moved to deny the Application for the following reasons:

> I think -- and I'm going to make a motion that we deny it because it does substantially affect the future development, planned or now in planning, for the area thereabouts.· And we've had two professionals to speak, the Mayor has spoke, Forrest Raymond has spoke. These places are being heavily considered for development, and it means a lot to the City of Richland. Therefore, my motion is to deny it.

75.    Thereafter, the Board of Supervisors voted to deny the Application.

76.    On May 15, 2023, the Board of Supervisors entered an Order denying the Application (the "Order"). [The Order is attached as **Exhibit E**.] The Order explained the denial was for the following reason:

> WHEREAS, the Board of Supervisors recognizes that the applicant must satisfy each and every provision of Section 2905.1 before issuance of a conditional use permit is authorized. Pursuant to Section 2905.1, subparagraph (g), the applicant must provide substantial evidence in support of its application that the proposed use is " ... [g]eneral[ly] compatib[le] with adjacent properties and other property in the district. The Board of Supervisors finds that the applicant has failed to prove by substantial evidence that the proposed use is compatible with the City of Richland Land Use Plan (a matter of public record) and the City's path of growth as presented by City of Richland Mayor, Pat Sullivan. This Board takes notice that, based upon its own Zoning Ordinance and Land Use Plan, the County takes into consideration and seeks to prevent conflicts between the County's Zoning Ordinance and Land Use Plan and that of our municipalities with respect to real property that is the subject of a conditional use application that is also situated in

17

close proximity to municipal boundaries. **Where, as here, the subject site is within close proximity to a municipal boundary and where the information before the Board of Supervisors indicates that the proposed use <u>may</u> be in conflict with that municipality's Land Use Plan or fall within the municipality's path of growth, the Board of Supervisors justifiably takes into consideration the municipality's zoning ordinances and Land Use Plan as a necessary part of its deliberative process.**

Order at 3 (emphasis added).

77.     In denying the Application, the Board of Supervisors only relied on speculation and conclusory statements; the Board of Supervisors did not rely on any evidence.[3]

78.     There was not substantial evidence that the proposed tower would be incompatible with the future growth, neighboring properties, or the comprehensive use plan for the City of Richland.

79.     Defendant's written denial of the Application is not supported by substantial evidence contained in a written record, and therefore violates the TCA.

80.     The injury to Verizon Wireless, by the unsupported and unsubstantiated denial of the Application, is continuing and irreparable.

81.     The denial of the Application cannot be quantified or remedied with monetary damages.

82.     The public interest, supported by the policies embodied in the TCA, warrants a declaration and equitable relief compelling Defendant to approve the Application.

83.     A present and actual controversy exists between Verizon Wireless and Defendant regarding denial of the Application in violation of the TCA.

---

[3] One other individual spoke about health concerns, but the Board of Supervisors noted in the Order that they did not consider this in connection with their decision because of federal law. Order at n.1

84.    Verizon Wireless has exhausted all of its administrative remedies.

85.    An injunction ordering issuance of a permit is an appropriate remedy for violation of the TCA.

**COUNT ONE**
**Failure to Comply with the**
**<u>Supported by Substantial Evidence Requirement</u>**

86.    Verizon Wireless incorporates by reference the allegations set forth in Paragraphs 1-85 above as if set forth fully herein.

87.    The TCA states in pertinent part:

(iii)    Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and **supported by substantial evidence** contained in a written record.

47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added).

88.    Verizon Wireless presented substantial evidence in support of the Application.

89.    The Application complied with every aspect of the County Zoning Ordinance.

90.    Verizon Wireless addressed all of the grounds for considering a conditional use (special exception) permit application under the County Zoning Ordinance.

91.    Defendant never informed Verizon Wireless that the Application was incomplete or otherwise failed to satisfy the County Zoning Ordinance.

92.    Defendant relied on speculative and conclusory public comments and generalized concerns to deny the Application.

93.    Defendant has failed to evidence any reason for denial, much less substantial evidence that the denial is authorized by the County Zoning Ordinance.

19

94.    Defendant's denial of the Application fails to meet the "supported by substantial evidence contained in a written record" requirement of the TCA because there is no evidence, much less substantial evidence, supporting denial of the Application.

**WHEREFORE**, Verizon Wireless prays that this Court:

a.    Hold an expedited hearing;

b.    Declare that the County violated federal law by denying Verizon Wireless' Application;

c.    Declare the County is mandated by federal law to approve the Application and issue all permits necessary to allow construction and operation of the proposed wireless telecommunications facility;

d.    Enter an order granting the Application and all permits and approvals necessary to allow construction and operation of the proposed wireless telecommunications facility;

e.    Estopping the County from imposing penalties or in any way preventing Verizon Wireless from proceeding with construction and operation of the proposed wireless telecommunications facility; and

f.    Such further, other, or different relief as the Court deems appropriate under the circumstances.

**COUNT TWO**
**Unreasonable Discrimination Among Providers of**
**Functionally Equivalent Services**

95.    Verizon Wireless incorporates by reference the allegations set forth in Paragraphs 1-85 above as if set forth fully herein.

4873-1729-2903

96.    The TCA specifically provides, in pertinent part, that state and local government regulation of personal wireless service facilities:

(I)    shall not unreasonably discriminate among providers of functionally equivalent services . . . .

47 U.S.C. § 332(c)(7)(B)(i)(I).

97.    Verizon Wireless met the requirements of the Ordinance concerning telecommunications towers.

98.    Verizon Wireless offered evidence that the Old Pearson Road Site was necessary to close the significant gap in coverage (both capacity and coverage issues) in Verizon Wireless' network and  offer wireless telecommunications service in the area that it would not otherwise be able to offer without approval of the Application.

99.    Verizon Wireless complied with all of the requirements necessary for approval of the Application.

100.    The Application was based upon sound engineering principles, user operational requirements, and marketplace demands.

101.    Defendant has previously approved the wireless facilities of functionally equivalent service providers in the County.

102.    In particular, based on information, belief, and publicly available information registered with the FCC, the County has approved wireless facilities including, but not limited to: (1) Antenna Structure Registration ("ASR") number 1000457 in Pearl, MS, (2) ASR numbers 1002124, 1021277, 1021404 in Brandon, MS, (3) ASR number 1008325 in Ratliff, MS, (4) ASR number 1021413 in Anse, MS, and (5) ASR number 1022586 in Jackson, MS.

103.    The intentional actions of the Board of Supervisors in denying the Application unreasonably discriminated against Verizon Wireless relative to other wireless telecommunications service providers who provide functionally equivalent services, and has the effect of prohibiting the provision of wireless services in the area near the Old Pearson Road Site in violation of the TCA.

**WHEREFORE**, Verizon Wireless prays that this Court:

a.    Hold an expedited hearing;

b.    Declare that the County violated federal law by denying Verizon Wireless' Application;

c.    Declare the County is mandated by federal law to approve the Application and issue all permits necessary to allow construction and operation of the proposed wireless telecommunications facility;

d.    Enter an order granting the Application and all permits and approvals necessary to allow construction and operation of the proposed wireless telecommunications facility;

e.    Estopping the County from imposing penalties or in any way preventing Verizon Wireless from proceeding with construction and operation of the proposed wireless telecommunications facility; and

f.    Such further, other, or different relief as the Court deems appropriate under the circumstances.

4873-1729-2903

**COUNT THREE**
**Unlawful Prohibition of the**
**Provision of Personal Wireless Services**

104.    Verizon Wireless incorporates by reference the allegations set forth in Paragraphs 1–85 above as if set forth fully herein.

105.    The TCA specifically provides, in pertinent part, that state and local government regulation of personal wireless service facilities:

(II)    **shall not prohibit or have the effect of prohibiting** the provision of personal wireless services.

47 U.S.C. § 332(c)(7)(B)(i)(II) (emphasis added).

106.    The Application met the requirements of the County Zoning Ordinance concerning telecommunications towers.

107.    Verizon Wireless complied with all of the requirements necessary for approval of the Application.

108.    Verizon Wireless provided substantial evidence of a significant gap in coverage and capacity and evidenced a lack of reasonable alternative locations for the proposed wireless telecommunications facility.

109.    Verizon Wireless provided evidence in the Application and at the City Council hearing that only the Old Pearson Road Site would meet Verizon Wireless' coverage and capacity requirements.

110.    Defendant materially inhibited Verizon Wireless' ability to fill a significant gap in coverage, strengthen its wireless network, improve capacity, or otherwise improve service capabilities.

111.    Defendant restricted new services and/or the improvement of existing services.

23

112.    No objective evidence was provided in opposition to the Application.

113.    Denial of the Application prevents Verizon Wireless from constructing a wireless communications tower on the Old Pearson Road Site.

114.    Denial of the Application has the effect of prohibiting the provision of wireless services in the area of the Old Pearson Road Site in violation of the TCA.

**WHEREFORE**, Verizon Wireless prays that this Court:

a.    Hold an expedited hearing;

b.    Declare that the County violated federal law by denying Verizon Wireless' Application;

c.    Declare the County is mandated by federal law to approve the Application and issue all permits necessary to allow construction and operation of the proposed wireless telecommunications facility;

d.    Enter an order granting the Application and all permits and approvals necessary to allow construction and operation of the proposed wireless telecommunications facility;

e.    Estopping the County from imposing penalties or in any way preventing Verizon Wireless from proceeding with construction and operation of the proposed wireless telecommunications facility; and

f.    Such further, other, or different relief as the Court deems appropriate under the circumstances.

**Dated: June 14, 2023.**

/s/ D. Sterling Kidd
D. STERLING KIDD

*Counsel for Counsel for Alltel Corporation*
*d/b/a Verizon Wireless*

**D. Sterling Kidd** (MS Bar No. 103670)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
One Eastover Center
100 Vision Drive, Suite 400
Jackson, MS 39211
Telephone (601) 351-2400
skidd@bakerdonelson.com

**W. Patton Hahn** (AL Bar No. HAH 002) *(Pro Hac Vice Motion Forthcoming)*
**N. Andrew Rotenstreich** (MS Bar No. 103706)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
1901 Sixth Avenue North, Suite 2600
Birmingham, AL 35203
Telephone (205) 250-8366
phahn@bakerdonelson.com
arotenstreich@bakerdonelson.com

**Aaron C. Garnett** (FL Bar No. 0100232) *(Pro Hac Vice Motion Forthcoming)*
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
200 South Orange Avenue, Suite 2900
Orlando, FL 32802
Telephone (407) 367-5451
agarnett@bakerdonelson.com

4873-1729-2903